IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
In Admiralty
Civil Action Number: 4:20-CV-183

| | |
|---|---|
| ATLANTIC COAST MARINE GROUP, INC., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) **COMPLAINT IN ADMIRALTY** |
| WESTERN BRANCH DIESEL, LLC. | ) ) ) ) |
| Defendant. | ) ) ) |

Plaintiff, ATLANTIC COAST MARINE GROUP, INC. ("ACMG"), by and through its undersigned counsel, hereby files this Complaint against WESTERN BRANCH DIESEL, LLC. and in support of the same alleges the following on information and belief:

## INTRODUCTION

1. This lawsuit seeks damages arising as a direct and proximate result of, among other things, negligent work, breach of contract, breach of warranty of workmanlike performance, and faulty parts and/or mechanisms all arising in connection with the failure to properly repair ACMG's '41 vessel.

## JURISDICTION & VENUE

2. This is a case of admiralty and maritime jurisdiction and an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure 28 U.S.C. § 1333.

3.  Venue for this civil action is proper in the Eastern District of North Carolina pursuant to 28 U.S.C. § 1391(b)(1)-(2) because defendant Western Branch Diesel, LLC. has a repair facility within this district and because the herein causes of action arise out of maritime activities and a transaction conducted by defendant within this district.

## PARTIES

4.  Plaintiff ACMG is a corporation organized and existing under the laws of the State of North Carolina and is engaged in the business of providing marine related services to vessels.

5.  At all times material hereto, ACMG was and is the owner of the motor vessel TOWBOAT 41 (hereinafter "TB 41") which is a steel-hulled vessel formerly part of the United States Coast Guard's fleet.

6.  Defendant Western Branch Diesel, LLC. ("Western Branch") is a business entity organized and existing under the laws of the Commonwealth of Virginia. Western Branch maintains a repair facility at 400 Sensation Way, Beaufort, NC 28516.

7.  Western Branch Holds itself out as a marine diesel repair facility that:

    > Through our facility or our service trucks, we offer a wide variety of repairs for all marine power needs, and other applications of diesel engines and generators. Our Beaufort Team represents over 60 years of combined experience including highly trained technicians and professional office personnel. We offer 24 hour emergency service 7 days a week.[1]

8.  Western Branch goes through great lengths to convey to the public that it possesses the capabilities to handle all kinds of marine diesel projects including repair, maintenance, and engine overhauls.

---

[1] http://www.westernbranchdiesel.com/locations/beaufort-north-carolina/

9. ACMG relied on these and other representations in selecting Western Branch to perform various repairs and maintenance tasks on the TB 41.

## STATEMENT OF FACTS

10. ACMG regularly operates TB 41 in furtherance of its marine towage, salvage, and environmental response duties in and around Beaufort/Morehead City, North Carolina.

11. On or around June 3, 2018 ACMG contracted with Western Branch to perform various maintenance services to the TB 41, these services included an oil change, impeller repair/replacement and servicing the raw water system for both the port and starboard Caterpillar 3208 engines.

12. On June 4, 2018, an employee technician(s) of Western Branch arrived at ACMG's facility to perform the requested services to the TB 41. These services were billed with the following description:

> Loaded tools and materials and traveled to job site. Loaded tools and materials on to vessel. Changed oil in port and starboard engines. Replaced oil filters, fuel filters and impellers. Had to remove water pump to gain access to impellers. Ran engines to check for leaks and system functionality, found that starboard engine was not cycling water out of exhaust. Customer had stated before service that starboard engine had trouble exhausting sea water. Cleaned vessel of supplies and traveled back to shop.
>
> *See* Western Branch invoice, attached hereto as Exhibit "A".

13. Western Branch returned to ACMG's facility to continue its work on June 5, 2018. These services were billed with the following description:

> Loaded supplies and traveled to job site. Got water flow on starboard engine by priming pump supply hose with water. Noticed that exhausted water was about half the volume on the starboard side versus the port side which customer had explained was an issue prior to service. Informed customer of possible solutions to correct issue.
>
> Job Complete.

> *See* Western Branch invoice, attached hereto as Exhibit "A".

14. Following Western Branch's work on June 5, 2018, a Western Branch technician stated to ACMG that the vessel was ready to go and that a Western Branch technician would be back to do a sea trial the following day.

15. At no time did Western Branch qualify, condition and/or otherwise suggest that the TB 41 was not ready in all respects to be operated.

16. At no time did Western Branch suggest, opine and/or otherwise speculate that there was any problem with the TB 41 which threatened its seaworthiness.

17. At no time did Western Branch state, order and/or otherwise direct that the TB 41 not be operated and/or that it should remain at the location of the service.

18. ACMG reasonably relied on Western Branch's representations and statement that the vessel was ready to go and on June 15, 2018, ACMG's personnel moved the TB 41 back to its assigned slip at the Portside Marina in Morehead City, NC.

19. After ACMG's personnel started the engines and moved TB 41 to its assigned slip, the vessel was observed sitting low in the water. Upon further investigation, seawater was discovered in the TB 41's internal spaces. Specifically, ACMG personnel opened the engine room hatches and discovered the starboard engine raw water hard line to the aftercooler had not been reinstalled correctly. Western Branch technician(s) had replaced the impeller and had taken apart the hard line to the aftercooler, and they failed to reinstall the components correctly resulting in seawater being pumped directly into the engine room.[2]

---

[2] This hard line relates to the starboard engine. This hard line is like a hose that runs from a valve at the bottom of the TB 41's hull up and into the engine. It carries cool seawater from the vessel's bottom into the engine. With it not

20. On June 15, 2018 following the engine room flooding, ACMG contacted Western Branch to discuss the issue.

21. Representatives from Western Branch met Captain Lee Sykes of ACMG at the Town Creek Marina boatyard as TB 41 was being hauled out of the water.

22. Representatives from Western Branch stated to representatives of ACMG and Mr. Tim Wood of R & T Marine and Equipment, Inc. that it was his [Western Branch technician] fault because he failed to reinstall/tighten the hose clamps correctly.

23. While discussing the situation further Western Branch stated to ACMG that Western Branch would "make this right."

24. The next day a representative of Western Branch spoke with Lee Sykes about TB 41, referring to it at "his [ACMG's] problem" and backtracked off their admission of liability from the previous day.

25. Due to the negligence of Western Branch's technician in failing to properly reinstall the clamps on the starboard engine raw water hard line attached to the aftercooler, TB 41 incurred approximately twenty-four inches of seawater intrusion into the engine room.

26. The engine room flooding caused substantial and permanent damage to both TB 41's Caterpillar 3208 engines as well as other components and things exposed to seawater in the engine room.

27. ACMG has retained the undersigned law firm to pursue recovery of its losses associated with the TB 41's engine room flooding and has agreed to pay said firm a reasonable fee for its services along with payment of the disbursements.

---

being connected properly so that its outflow was directed into the engine, the effect was that the hard line' seawater outflow was discharged into the vessel's interior spaces.

28. Any conditions precedent to this legal action have been waived, performed or otherwise occurred.

## COUNT I
### (Breach of Maritime Contract)

29. Plaintiff ACMG adopts and realleges the allegations in all of the above paragraphs and further states:

30. Western Branch Diesel, LLC. entered into a contractual relationship with ACMG to repair and service, among other things, TB 41's port and starboard Caterpillar 3208 engines (including their ancillary systems).

31. Pursuant to this contractual relationship, Western Branch Diesel, LLC. was under a duty to provide materials and perform the agreed-upon work using ordinary care and in a manner consistent with industry standards and good maritime trade practices.

32. Specifically, and among other things, ACMG contracted Western Branch Diesel, LLC. to provide vessel repair services so as to deliver a fully functional, safe and seaworthy propulsion system.

33. Western Branch Diesel, LLC. materially breached its contractual duty to ACMG.

34. As a direct and proximate result of Western Branch Diesel, LLC's breach, ACMG incurred damages including marine survey costs, hauling charges, storage fees, costs to properly repair, loss of use and other damages associated with the incident in an amount to be determined at trial and not less than $50,000.00. ACMG further seeks a refund of monies paid to Western Branch Diesel, LLC. for those repairs which were improperly made in an amount to be determined at trial.

## COUNT II
### (Negligence)

35. Plaintiff ACMG adopts and realleges the allegations in all of the above paragraphs and further states:

36. Western Branch Diesel, LLC. was under a duty to perform the agreed-upon work to TB 41 in a safe and reasonable manner using ordinary care consistent with industry standards and good marine trade practices.

37. Western Branch Diesel, LLC. breached its duty to ACMG by failing to exercise reasonable care in, among other things, properly repairing and servicing the starboard engine's raw water hard line connection to the aftercooler which failure caused damages to, among other things, components and things other than, but including the starboard engine on TB 41.

38. Western Branch Diesel, LLC. further breached its duty to ACMG by failing to schedule and undertake a comprehensive sea trial, failing to hire technicians with the requisite skill and expertise necessary to properly service and repair TB 41, and in other ways as will be shown at trial.

39. As a direct and proximate result of Western Branch Diesel, LLC's breach, ACMG incurred damages including marine survey costs, storage fees, hauling charges, costs to properly repair, loss of use and other damages associated with the incident in an amount to be determined at trial and not less than $50,000.00. ACMG further seeks a refund of monies paid to Western Branch Diesel, LLC. for those repairs which were improperly made in an amount to be determined at trial.

## COUNT III
### (Breach of Implied Warranty of Workmanlike Performance)

40. Plaintiff ACMG adopts and realleges the allegations in all of the above paragraphs and further states:

41. Western Branch Diesel, LLC. is a provider of vessel repair services in Beaufort, North Carolina.

42. The contract referenced in Count I is a contract for vessel repair services to wit: service, maintenance, and repair of TB 41's Caterpillar 3208 engines.

43. A warranty of workmanlike service is implied in every vessel repair contract unless the parties should expressly agree to exclude the same.

44. At no time did the parties exclude application of the warranty of workmanlike performance.

45. Western Branch Diesel, LLC. warranted to ACMG that it would perform the contracted work with a degree of diligence, attention and skill adequate to complete the task.

46. To the extent that it is argued that the warranty was not extended to ACMG, in the alternative, ACMG was an intended beneficiary of the repair contract.

47. Western Branch Diesel, LLC. failed to properly perform in a workmanlike manner and breached the warranty of workmanlike performance.

48. As a direct and proximate result of Western Branch Diesel, LLC's breach, ACMG incurred damages including marine survey costs, storage fees, cost to properly repair, loss of use and other damages associated with the incident in an amount to be determined at trial and not less than $50,000.00. ACMG further seeks a refund of monies paid to Western Branch Diesel, LLC. for those repairs which were improperly made in an amount to be determined at trial.

# COUNT IV
## (Loss of Use)

49. Plaintiff ACMG adopts and realleges the allegations in all of the above paragraphs and further states:

50. ACMG's TB 41 is a commercial vessel which serves as a tow, salvage, and environmental response platform in and around coastal North Carolina.

51. Following Western Branch Diesel, LLC's failure to properly reinstall the clamps on the starboard engine raw water hardline to the aftercooler TB 41 suffered significant flooding in the engine room.

52. Due to the substantial flooding both Caterpillar 3208 engines and their ancillary parts and other components and things were significantly damaged, resulting in a partial loss of TB 41.

53. During the pendency of repairs, ACMG has suffered loss of use as ACMG is without a large and/or heavy weather vessel meaning that it has foregone known opportunities, lost unknown opportunities and otherwise suffered revenue loss and damage to its reputation.

54. As a direct and proximate result of Western Branch Diesel, LLC's breach, ACMG incurred damages including marine survey costs, storage fees, cost to properly repair, loss of use and other damages associated with the incident in an amount to be determined at trial and not less than $50,000.00. ACMG further seeks a refund of monies paid to Western Branch Diesel, LLC. for those repairs which were improperly made in an amount to be determined at trial.

# COUNT V
## (Unjust Enrichment)

55. ACMG adopts and realleges the allegations in all of the above paragraphs and further states:

56. Plaintiff ACMG paid Western Branch Diesel, LLC. to properly perform certain agreed-upon work to the TB 41.

57. Notwithstanding its failure to properly perform said agreed-upon work, Western Branch Diesel, LLC. demanded payment from Plaintiff ACMG which payment Plaintiff ACMG made without knowledge that the agreed-upon work had not been properly completed.

58. Payment was made in full for the work request by ACMG and agreed to be performed by Western Branch Diesel, LLC.

59. At the time of demanding and accepting payment for the agreed-upon work, Western Branch Diesel, LLC. knew or had reason to know that it was receiving payment for work that was either not performed, performed in an improper manner and/or otherwise deficient in ways that will be shown at trial.

60. ACMG conferred a benefit on Western Branch Diesel, LLC. and under the circumstances it would be inequitable for this Defendant to retain the benefit.

61. As such, Western Branch Diesel, LLC. was unjustly enriched and ACMG seeks a refund of monies paid to Western Branch Diesel, LLC. for those repairs which were improperly made in an amount to be determined at trial along with all other lawful damages properly awarded to ACMG by reason of this Count V.

WHEREFORE, Plaintiff prays:

1. That it be awarded all of its compensatory damages;

2. That a final judgment for damages be entered in its favor;

3. That it be awarded its attorneys' fees as permitted by the applicable law;

4. That it be awarded costs and disbursements;

5. That it be awarded pre-judgment and post-judgment interest; and

6. That it be provided such other, further, and/or different legal or equitable relief as this Honorable Court deems just and proper.

This the 29th day of September 2020.

Respectfully submitted,

ATLANTIC COAST MARINE GROUP, INC.
By its attorneys,

/s/ E. Winslow Taylor
E. Winslow Taylor
NC Bar #: 45533
Taylor & Taylor Attorneys at Law, PLLC
418 N. Marshall St., Suite 204
Winston-Salem, NC  27101
Tel.:  336-418-4745
Email: winslow@t2legal.com